Do I understand that, maybe on both sides, you're going to have different lawyers argue for different periods of time? Is that correct? Not exactly, Judge Smith. I'm going to handle the aspects that I've dealt with in the brief. I'm going to focus my argument today on the pre-appointment period and rely upon the argument set forth in the brief with regard to the post-appointment. Counsel will be dealing with state law issues regarding liens and the enforceability of certain fee claims. And how are you going to divide up your time? I have approximately 13 minutes. Let me… I'm sorry. Is it 13 minutes? I think that's correct. I thought I was given approximately 13 minutes. No, that's fine. I didn't hear you correctly. Oh, okay. You said 30 minutes. Oh, no, no. I'm sorry. I'm sorry. 13 minutes. 13 minutes, and he's going to have seven? Yes, and I'd like to reserve, say, two minutes for rebuttal, if that's fine. Sure. Just keep the clock going on the other side. I'm Samuel Zadbrook, Your Honor. I will be sharing with Ms. Nells. Ms. Nells represents Volkswagen. I represent the Plaintiff's Steering Committee, the class counsel. I will take 13 minutes, and Ms. Nells… Okay. So it's 13-7 both ways, then, right? Right. All right. Thank you all, counsel. So please defend yourself. Good morning. The central issue before the Court that I'm going to address is a question that was framed very well by the Gottlieb Court. And that question is this. In a class action, how does work performed by a series of attorneys prior to the selection of a few counsel to serve as lead or class counsel suddenly become worthless as of the date of the appointment? That's what the Gottlieb Court answered and provided a path and said their work does not become worthless and remanded for a direction that the special master's recommendation be followed. I'm suggesting today that this circuit is well follow the path outlined by the Gottlieb Court and adopt a rule which says that the work of other non-lead counsel does not become worthless upon the appointment. Let me ask you this, counsel. The Judge Breyer's Order 5011 set out a lot of detailed instructions about what people needed to do if they wanted to be compensated. I think, if I recall correctly, there are like 13,000 pages in the record. You had some counsel like you're representing who were involved before the class got certified. You presumably have clients. You can proceed against those clients in your whatever court you initiated it on. But in this case, Judge Breyer said Volkswagen has not agreed to pay these other fees. If you want to participate, here are the rules that you have to follow in order to get compensated. You didn't do that, right? Yeah. We certainly knew that, and I will address that issue in the context of the preappointment phase. Okay. Because that's the focus of my argument. And I'd like to use my firm's work, although I'm here representing 18 firms, I'd like to use my firm's work as an analytic model to understand the inherent contradiction in the rulings of the court. Mind you, the district court, in assessing the application of lead counsel and granting that application, found that the work that was done by the PSC and lead counsel was not only superb, but was worthy of a multiplier of 2.63. So, in effect, you had paralegals earning over $1,300 an hour if they happened to be affiliated with the chosen firms. You had senior lawyers earning over $4,200 an hour, provided they were one of the chosen, and junior attorneys with very little class action experience earning $2,000 an hour, where our firms were deemed to earn zero and to have provided worthless services. And at the same time of finding the work superb and worthy of a multiplier, the district court found our work of 244 separate firms who applied, 18 of which have appealed this, have found the identical work to be worthless. And not VW and not lead counsel has ever explained how that contradiction can stand. Not one of them have ever said in any of the voluminous briefs why work that was done before the appointment is worthless when identical work is deemed to be so valuable to the class. Kennedy, do you agree that if you're a district judge and you're dealing with a multidistrict case like this, a massive case, has to have some order in it, you can have a lot of really, really good lawyers working at a lot of different places in a lot of different jurisdictions doing some really superb work that may or may not have any benefit to the class? I completely agree. So the question is how does the judge handle that? How do you deal with it? And I'm going to set forth the answer to that. And if Your Honor will just give me a little leeway to illustrate some of the backdrop and then I'm going to get to, in effect, the punchline. So here's the backdrop. Identical work getting completely different treatment in two separate opinions, one granting the FIAP and one denying the FIAP of the non-lead counsel. So let's take an example. My firm was one of the first in the country to file. We filed before Leif Cabraser, who was appointed lead counsel, and before 19 of the 21 on the PSC. My complaint was deemed worthless. My firm has been appointed throughout the country in lead or co-lead positions in many, many cases, state, federal, MDLs. And yet my complaint was deemed completely worthless. My partner was invited to speak at a conference in California and sat directly next to Leif Cabraser, the lead counsel. Her work in that presentation was deemed compensable at the rate of 2.63 multiplier. My firm's work was deemed worth zero. We led, since we were literally the second or third in the country, we led the press blitz both in Europe and the United States. And our client, Hour 11, appeared on virtually every major news program and in print media throughout the world. That was deemed worthless. The time spent by the chosen was deemed worth 2.63. Kennedy. Counsel, with respect, you can continue on this line if you wish. I get your point. Okay. You don't think it's fair, and you did a lot of good stuff as far as you're concerned, right? So tie it now to what Judge Breyer has to say. Now I'm going to tie it. Now I'm going to tie it. So clearly, clearly we have an inherent contradiction never been answered by anybody in this case as to why my complaint filed before any of them and why my efforts are worth zero. Well, let's see. I'm going to – I have the same concerns as Judge Smith, so let me try again. The district court in this matter made factual findings as to why fees were denied, and I'm focusing, as you are, on work prior to the appointment of class counsel. So let me focus you in on the factual findings, which we review for clear error that Judge Breyer made. He indicated that the timing was very short. The cases were consolidated before him as part of the MDL litigation less than three months after public disclosure of Volkswagen's misconduct. And so his conclusion was there consequently was little to any pretrial activity in the cases filed by non-class counsel, and the filings alone did not materially drive settlement negotiations of Volkswagen. So that's one factual finding. He also made a factual finding to the extent that there was work prior to consolidation that benefited individual clients and not contribution to the settlement as a whole. Can you address those specific findings? I will. Those findings are bold conclusions, and the case law in this circuit requires some kind of meat on the bones which does not exist. Do you understand respectfully that there was 13,000 pages in the record? There is not a single word in a very short opinion denying our joint application for fees. Not a single word in the opinion analyzing what was done. Nothing. Not a single reference to any of 244 separate fee applications. Nothing. And the case law in this circuit does not permit that. There has to be some elucidation. At the very least, there has to be a remand for findings of fact. That is a conclusion that Your Honor has cited, but that is not a finding of fact supported by anything. And the case law requires that support. It's not in this opinion. Let's go further. Kennedy, which cases do you think best substantiate your position that such a finding is required? Judge, I don't have the briefs on my desk here. That's a really important point. I've briefed that. I briefed that very issue. I briefed that very issue. I'm happy to supply the pages of the brief. It's just not committed to memory. Yeah. Yeah. So in effect. But what I'm struggling with, with your response to my question, is you're saying, well, these are just conclusions by the district court that's not basically fleshed out by more specific factual findings. But you're here trying to convince us that these findings were clearly erroneous, but you haven't given me anything to overturn findings made by a district judge who has intimate familiarity with this massive litigation. And I — and, Your Honor, I have two responses to that. First of all, it's my position that this is a de novo review on that issue, that it's not here as an abuse of discretion, because the court did not follow its mandate, which is to support — support bald assertions with factual findings. So my view is it's not — it's not an abuse of discretion issue, but I will deal with that in any event. There's nothing here in this record, period. It just does not exist. It does not exist. There is nothing in this — You're saying, number one, you don't have the case or cases yet. It says the judge has to find that what you did was not necessary. And I don't agree with you that that's what happened. But you're also saying that our review is de novo, not for clarity. That's right. It's de novo because the court — the district court failed to apply the proper standard and make factual findings supporting conclusions. So here's the — and I'll tie this into — But you're just saying the normal de novo review of legal error. Yes, exactly. There was two legal errors here. One is the court — the court, as a matter of law, found that there will be no right for pre-appointment legal work to be compensated. That's the fair reading of the denial. And the opinion is — the guts of the opinion is all four or five pages long. So that opinion, as a matter of law, says we're not going to apply any — any standard. We're not going to adopt Gottlieb. The district court specifically said, I'm distinguishing Gottlieb. And, again, distinguishing Gottlieb time makes no sense because this case settled within five months of the appointment of lead counsel. So you can't use time as a distinguishing factor. This was the most sui generis case I've ever seen in 40 years of practice. An admission of liability literally before the filing of the action and five months figuring out how we're going to pay the money. This was — this was a dream come true for the plaintiff's bar, and probably I will never see it in my lifetime again. So the work that was done went all said and done, focused on damages, and it was done in five months. So the distinguishment — And these people have flowers or anything to thank them? I'll check the record on that, Judge. I'll check the record. So let me tie that back as well. Where in the opinion is the conclusion of the district court that the complaint filed by my firm as compared to the complaint filed by 21 other firms appointed to the PSC and lead counsel was worthless or any different? Think about it. Every complaint filed by 22 lawyers, not only was deemed great, was given a 2.63 multiplier. My complaint filed before lead counsel and filed before 19 of the 21 was deemed worthless. Where is there a finding which the district court said, I compared the work product to that work product of those who were appointed, and I find that work product to be insufficient or lacking? It doesn't exist. This gets back to what I asked you before. What case law, what rule do you believe requires, in this case, Judge Breyer, to make such a finding? Okay. I'm happy. I've got the briefs here. Okay. And in rebuttal, I will give you the pages of the briefs that will. You're getting down to almost seven minutes now. He's going to want to stand up and have his turn. I'm going to zip through the balance of it. I appreciate it, Judge Smith. Great. So let's look at also, let's look at, let's look at how this ruling also really de-incentivizes plaintiffs and plaintiffs counsel from going forward. In the court's opinion approving the fee application of the PSC, the court made very clear that the courts are looking to incentivize contingent work. They want to incentivize lawyers, specifically in consumer class actions, to come forth because they're doing the work on a contingency basis. Well, in this case ---- He's starting to get into his time. I'm sorry. I thought I had 13 minutes. I'm at 6. You have 13 minutes. I have 6. I think I have ---- No, no. That's the total time of your side of 20 minutes. Okay. I have a 6.48. You used 13 minutes and some change. Oh, I'm sorry. I completely apologize. Let me tie it up. It's up to you. You're using his time. All right. Can I just tie my sentence up if I can? Sure. I'll tie my sentence up. That's okay with him. I appreciate it. So in effect what you're doing, you're setting up, you're setting up a disincentive and you're setting up two different classes. You have class reps who have to pay their own lawyers and class reps who don't have to pay their own lawyers because they happen to be the chosen. I think that that sets up a very, very bad message. I think that that violates a sense of public policy to incentivize these kind of actions. And I think that that should not be permitted by this circuit. Thank you. Counsel, you don't have your full 7 minutes, so we're going to be really nice to you your 7 minutes is. Move him up to 7.  Thank you, Your Honor. Jimmy Fineman on behalf of myself. I made clear in the briefs that the relief that I'm seeking from this court is a finding that the injunction that Judge Breyer entered under the All Writs Act does not prohibit me from seeking my Virginia State statutory lien claim for attorney's fees. Counsel, let me. Help me. Yes, sir. I recall I was in an en banc case where you were arguing almost the same thing. What case was that? It was in Pasadena recently. That was the Hyundai. I don't see that. That's a different case. Never mind. I apologize. Okay. Okay. Is the focus of your argument now that the lien order and the injunctions has already been vacated by the district court? The police have taken that position, and I would like that to be true. I understand just today that they may be taking a different position, so I was going to reserve the bulk of my time. But the only relief I'm seeking, Your Honor, is that I certainly have no interest or desire to come get crossways with any injunction of the federal court here or anywhere. So the only relief I'm seeking is that that injunction entered under the All Writs Act at this point does not prohibit me from pursuing my state law statutory lien claim in Virginia courts. And unless there are some other questions, I will sit down and reserve the time after I hear their position. Okay. So you're reserving time. Maybe you ought to talk to your friend over there. Maybe you can divide something up. Well, we did talk well before this, and that was the agreement that we made. We'll let you guys work it out. So you all are going to save your time. I'm saving. I'm reserving my seven minutes. I still have 5.15. All right. Okay. Thank you. Okay. You work it out there. Okay. All right. Let's hear from Volkswagen. Can we just start with the lien issue? Sure. Can we just start with the lien issue? What is your response to what was just said in the last minute? My response, Your Honor, is that I don't believe that there is jurisdiction in this Court over that issue. They have not identified an order that prohibits them from going forward in Virginia. I don't know what they're appealing from. They're appealing for a declaration as to the boundaries of an order that has been rescinded at this point. And I would direct the Court's attention to the Supreme Court's opinion in Gunn v. Minton, which dealt with a case where there was clear federal subject matter jurisdiction, a patent case, and then there was a collateral issue between attorneys and clients. There are malpractice action in Texas. And the Supreme Court said that does not raise a federal issue. There is no extension of supplemental jurisdiction there, and that can proceed in state court on its own. And as far as I understand it, I don't understand what order appellant seeks here. As far as you're concerned, as far as Volkswagen is concerned, Mr. Fineman is free to pursue his action in Virginia if he wishes to do so. As far as any order from the district court is concerned, yes. There may be releases that his clients signed. But in terms of the order that he's concerned about, you think there is no such order anymore? And so then when he sues you in Virginia, you go in. I'm not Volkswagen. I hope he doesn't sue me. Who's Volkswagen? Ms. Nelson. Okay, there she is. All right. Wrong person. I don't have a question for you. Okay. In that case, I will proceed to the speed of work. Just for clarification in light of what you just said, you're not representing Volkswagen. Your co-counsel over there is. Yes, I'm representing Samuel Zakaroff. I'm representing the Plaintiff Steering Committee class counsel. Thank you. I apologize for that, Your Honor. So the main question that I want to address is Mr. Nagel's point. I think that there's a series of mistakes that Mr. Nagel makes. And the first one, and the most fundamental, is, again, it's not clear what order he wants from this court. He has gotten the process that is due him in the court below. There are cases from this court which are cited in VW's brief, such as the Cunningham case and the Carter case, which say that there only has to be, by the district court, an identification of the basis for its ruling. Mr. Nagel says over and over the district court made no fact findings. If you actually look at the district court's order and you look at the footnotes on pages four and five, there's extensive references to the record as examples of the reasoning, of the basis for his reason, opinion, that there was no benefit conferred here. But there's a deeper problem here, which is Mr. Nagel never identifies on what basis he wishes to get paid. And this court in the Mercury case and, again, in the Stetson case, Judge Smith only a year or two ago, said that there is not a presumption under the American rule that you recover fees from your adversary. There has to be some basis for that.  So the only possible sources would be either a common fund or an agreement by Volkswagen. The Volkswagen agreement is perfectly clear, the settlement agreement, and Judge Breyer recounts it to pages two and five of his opinion. They say they will pay those counsel up to a certain amount who conformed with PTO 11. There is no claim by Mr. Nagel, and he was asked expressly by Judge Smith, and he did not dispute this, that he did not comply with PTO 11. They never submitted. They were not part of the process. And so by the express terms of the contract of the settlement agreement, they are outside the boundaries of what Volkswagen agreed to. So the only other source of a potential payment is some kind of common benefit. But this is not the ordinary kind of class action. And the cases that they cite to, including the Gottlieb cases, are cases where a claim is made upon a common fund, a common benefit fund. Here, Volkswagen made an offer of up to $10 billion, a little over $10 billion, to any paid on a one-by-one basis to any individual who accepted the terms, turned in a car, or had the car remediated. There is no fund out there from which they want to go. One could collect attorney's fees. The only fund for attorney's fees that was created here was the $175 million set up by agreement between the parties on the condition of the settlement agreement. And when they speak about Ginsburg. If he would argue that he filed the first complaint and got this whole thing going and, therefore, he contributed to a common fund, isn't that his argument? So he is making a common fund argument. He's making sort of a common fund argument, Your Honor, but he doesn't identify where the common fund is. He doesn't identify what he wants to get paid from. He did not create a common fund. There is no pot of money sitting out there waiting to be distributed to the class. His claim fails on many different levels. First of all, the argument that he did this was found not to be true by the district court. Everybody, there were hundreds of these suits filed during that period. Counsel, let me ask you this. The opposing counsel suggests that the district court basically just ignored everybody that filed before. That's not my understanding, but would you tell us what you think is the best evidence of Judge Breyer's not only being aware of previous counsel, who ultimately did not become part of the group that you represent, but also how he dealt with that. Where in the record would we find the judge's determination in that regard? In the fee opinion regarding the denial of fees to non-class counsel, Judge Breyer expressly references the affidavit put forward by lead counsel, Elizabeth Cabraser. In that affidavit there is the mechanism set out for how non-PSC plaintiff hearing committee counsel were compensated, including those individual counsel who were compensated for the work they did prior to the formation of the PSC. What was required was that there was a finding that that work actually contributed, and then they had to go through the PTO 11 process of documenting their time, submitting it for it to be audited, and some review to make sure it was necessary. So to go back, and that's my understanding as well, if you're one of these folks, I think he said he represented 18 firms, but there may have been more, that you, number one, have to show that what you did contributed, benefited the class, and then basically your work had to be audited. Is that correct? That is correct. You had to go through the process so that it could be reviewed, authorized, and you could be made part of this process. And the record's clear. Judge Breyer makes the reference in his opinion, and Ms. Cabraser's declaration before the district court spells out that there were 99 firms who were not PSC firms who were compensated for their work on this case. They all communicated with class counsel. They all did work under the aegis of class counsel. They all went through the auditing and monthly reporting process. There were, by contrast, 244 firms who appeared at the end of the case. Some of them, as Judge Breyer notes, didn't even wait until the end of the case to start filing independent fee submissions. They did not go through the PTO process. So going back, Judge Rustani, to your question about the common fund, they, by not going through the PTO 11 process, put themselves outside the contract. So they have put themselves outside the only source of potential fees here except, as Judge Smith referenced earlier, from their clients. They have attorney-client relationships. They can recover in whatever form they want from their clients. I want to be sure I understood you correctly. You're saying that there were 99 firms who were outside the process who, in fact, did indicate what work they had done. It was found to be helpful to the class. They went through the audit, and they got compensated. Is that right? Yes, with one caveat, Your Honor. You used the word outside the process, and I think that's critical. They were inside the process. They were non-PSC, or if I could use the pejorative phrasing, they were not part of the chosen. They were the unselected. And that included people who did work prior to the appointment of counsel. That is correct, Your Honor. In footnote, in paragraph. And just to clarify, when you say people inside the process, you're referring to the 99 firms who were not part of the chosen PSC group, but who nevertheless complied with PTO 11. That's correct, Your Honor. In coordinating with counsel first, getting approval, working together, all that stuff. Yes. And paragraph 7, which Judge Breyer specifically references, is quite critical because one of the things that had to be done when everything was coordinated before Judge Breyer was a master complaint had to be filed and representative class plaintiffs had to be found. There were over 600 potential class plaintiffs who were reviewed. All those people were represented by some lawyers somewhere. Most of them not from the PSC. And so what Ms. Cabraser says in paragraph 7 is that we interviewed those people, we made the decision who should be class plaintiffs, and we asked those firms who provided those individuals to submit their time under PTO 11, which they did. And the next step is not in the record, but the next step is that they could get compensated just like anybody else if the work was fruitful. Is there anything in the record that indicates why opposing counsel and the 18, at least, of his folks involved chose not to go through this process of indicating how they benefited the class and be audited? I have no idea, Your Honor. There's nothing in the record. What is most striking in the record is that they never explain that. They never say. They never challenge PTO 11. They never challenge the authority of the district court to manage litigation. And this court, in cases, again, the Bluetooth case, has taken the position that it is critical that the district courts have a process for managing these cases and managing the fee requests. If I could make one more point on the fee request before I turn this over, I think there's a persistent misunderstanding of the fees. And this court, the earlier panel in the Bosch appeal, made quite clear that the compensation system here is based upon a percentage of the recovery. And I think that Judge Breyer's opinion awarding fees in the 2.0 settlement is quite clear in how he goes about the analysis. And only on page 8, at the very end of his opinion, does he turn to the hours. And he says, I'm doing this for purposes of a lodestar comparison. And this court, in the Bosch opinion, said, that's the ideal practice, citing the Viscano case, which is the same case that Judge Smith relied on in Stetson for the best practices. And Stetson is entirely consistent with this. And so what you get is a cross-check. Nobody is getting compensated based on their hours. There was $175 million given for compensation of all the lawyers and legal work in conformity with PTO 11 because that's what Volkswagen agreed to. And Judge Breyer made a finding that that was a reasonable amount given the benefits, the work and all this. And then, consistent with the clear law of this circuit, Judge Breyer performed a lodestar cross-check. So it's not that this hour was compensated here, this hour. No, that was not the basis of the fee award. And that's a persistent misrepresentation by opposing counsel. Kennedy with a cross-check of lodestar. That's correct, Your Honor. All right. We're going to have to hear from Volkswagen. Sorry, I didn't read my day sheet. Not a problem, Judge Rosani. It may have pleased the Court. Sharon Nellis from Sullivan and Cromwell. I'm here on behalf of the Volkswagen defendants. I can answer at least one open question. I have received no flowers. Oh, my. Mr. Issacharoff has done a very good job. I will believe I can be brief. Mr. Issacharoff raised an important question that seems to be open here, which is it is unclear where appellants think they will receive any additional funds from. One thing I know is they cannot receive them from Volkswagen. Volkswagen agreed to pay the reasonable fees in connection with the class action to the class counsel and to class counsel's designees. That is all VW agreed to pay. These fees here are subject to that contract.  Let me ask you this, Ms. Nellis. Yes. The judge indicated that the folks who were not part of the class or participated in the way that was mentioned, the 99, for example, could proceed in whatever other court against their clients. That's correct. The understanding there, I gather, was that Volkswagen was out of the picture. Correct. Because you had agreed this was the class. If they recover anything else, it's going to be against their clients because they may have some arrangement with their clients that they were going to pay them. They may have an independent fee agreement with their client. It may be binding, and they are free to proceed with those in state court. That's correct. If I could defend Judge Breyer's decision on non-class fees for just a moment since the question was raised below. What Judge Breyer says in that order, I think, shows that appellants got very good process here. What he says is, and correctly so, and I don't think it's in real dispute, is that fees are not owed under the settlement agreement by Volkswagen to any of these non-class counsel. And he says that's because that's not in the agreement. We did not agree to pay for non-designated counsel. So what that leaves is solely the common benefit exception. He says you're not entitled to have been awarded fees under that common benefit exception because there was a process for that. That process was compliance with PTO to go to class counsel to show that your work helped create the common benefit and be awarded through that process.  Nonetheless, I'm going to take a look at your fee applications. And he does. And he looks at those applications, those 13,000 pages, and says I see no common benefit here. There's what plaintiffs received was extra process. And it might be interesting, if you have this context, because I think it's interesting to know, that what happened here was when Volkswagen, and this gets to Mr. Fineman, when Volkswagen, when the settlement was announced, what happened was Volkswagen started receiving letters from private attorneys who said we're putting a lien on those settlement proceeds. So you cannot send those proceeds to the individual class members who have chosen to participate in the settlement. You have to divert some of those funds to me. And that caused a direct conflict with the terms of the settlement, which said we have to pay the funds to the class members. And so Judge Breyer resolved that by putting in place the lien orders. In part of the ‑‑ and in response to the placement of the lien orders, which asked for fee agreements and time, what happened was a number of individual plaintiffs then filed sua sponte fee applications, not in ‑‑ not responsive to the lien order, but just these separate fee applications, which is why there was a secondary process outside of the fee application, the original fee application by lie counsel. Now, excuse me. With respect to Mr. Fineman, if I may, I'm not sure that there is a dispute here. Certainly there is no lien order in effect any longer that precludes Mr. Fineman from pursuing fees against his own clients, and that was all the lien orders below precluded. The lien orders have now been lifted. The only thing that remains in effect with respect to those lien orders is the injunction upon Volkswagen that says no matter what, you must still pay those fees to individual class members, no fees may be diverted. There was never anything in that lien order that addressed a direct claim for fees against Volkswagen. That, that kind, that order, or let me see, let me put it, excuse me, the prohibition against seeking fees individually against Volkswagen is in the settlement agreement and in the final approval order where there is a release, and that is a release that has not been ‑‑ Now, what will happen, I guess, is he will sue in State court. Correct. And you will go, and if he sues you, you will go in and do whatever you think you have to do. Correct. If he sues us, what we will do is one of two things. We will either defend ourselves in Virginia or we will go back to Judge Breyer and say, Mr. ‑‑ there is a suit that is ‑‑ does not comply with the injunction that is in the final approval order, and that's the injunction in the final approval order, not the lien orders, that prohibits seeking claims that have been released. But then none of that has anything to do with these lien orders. Thank you, Your Honors. Thank you very much. Now, have you two figured out what you are going to do? Yes, sir. I'm going to sue Volkswagen in Virginia State courts as allowed by Virginia Code Section 54.1-3932. And I'm ‑‑ I want to make sure I am not barred by any injunction issued by the court below to do that. Whatever defenses they may have to that, they can raise that. But, you know, that's not before the court today. That's for another day. I think Volkswagen would agree with that. It looks like you can be a happy man today because apparently there is no lien that stops you from doing what you want to do. Well, I don't know what ‑‑ pardon me. I don't understand when you say no lien, no injunction. No injunction. No injunction. I apologize. No injunction stopping you. Very happy man. Very happy man. Okay. Yes, sir. We like people to be happy. Thank you, sir. And with regard to the Hyundai case, the position I'm taking here is the same that I took there. Virginia law must be respected. Okay. Thank you. So is that what we're going to do? We've got some time left. So you, sir, are the lucky beneficiary of the four minutes and 24 seconds left by your gracious colleague. That was sweet of him. I appreciate that, Judge Smith, and I think I can even be shorter than that. We're counting on it. I'd like to just address two of the core questions today. First of all, I have argued today with regard to the pre-appointment attorney's fees. I've not argued. I'm relying upon my brief for the post-appointment under PTO 11. PTO 11 does not deal with pre-appointment fees. So to the extent that that's been merged or melded in the argument, I need to differentiate that. PTO 11 does not make any conclusions about whether attorney's fees that were incurred prior to the appointment in any way are going to be disposed of or in any way are going to be given. The right to decide that is going to be vested in lead counsel. Counsel, let me ask you this. Just not say that. As you well know, under American law, you either have an agreement by somebody to pay you attorney fees or there's a common fund or some statute or something gives you that right. In this case, you did not participate in the class process in the sense that you weren't brought into the chosen. I wasn't part of the chosen. That's right. So where is it you believe your fees are going to come from if you're successful? A common fund? Out of the $175 million, that's where. So you believe you can break into the fund that is used to pay the class member, the attorneys represented? That's exactly right. And apropos to that, there was nothing in any of the notices that were sent to class members, nothing in the notices that would ever lead any class member to believe that they're going to pay their own legal fees. In fact, everything that was distributed led the public to believe that legal fees would be paid by VW. That's what was put out. And your best argument that you can break into that fund at this point is what? My best argument is because the public was led to believe that attorneys' fees would be paid, that we contributed to the creation of the common fund. It's a $10 billion-plus fund that has been drawn down upon to a very good extent. What about Judge Breyer's comments about the common fund? I think, Judge, to the extent he made a ball-faced conclusion that the work done before appointment did not contribute to it, that is not supported, and again, tying into Your Honor's question before, the cases we rely upon are set forth on page 19 and 20 of our initial brief. If Your Honor wants me to list them, I'm happy to do it now. No, no, it's fine. I just needed to get one. Yes, page 19 and 20. And there is ample authority in the Ninth Circuit, which over and over again says a conclusion is not sufficient. I also would tie that bow with pages 5 through 9 of the Court's opinion denying our application where you're not going to see a single citation to a fact. And what counsel tells you in footnote 4 and 5, there's references and conclusions that are factually based. That's absolutely not true. And I'd ask a review of footnote 4 and 5, which deals with issues that are not related to what it is we apply for. So to the extent that they're arguing that PTO 11 somehow permits them to determine whether or not the pre-appointment work will be compensated, that's simply not factually true. And not only is it not true, but the district court invited all of the non-lead counsel, all non-PSC, to apply, which we did. And again, that application was denied after the opt-out provision elapsed. Let me ask you one final question. Why didn't you participate in the non-blessed, non-chosen way to get some of your fees paid by providing documentation showing how you benefited the class and then go through the audit process? Your Honor, we'll see in the appendix before you multiple e-mails and letters to Liska Brazer, please, Liz, tell us what we need to do. Please, Liz, look at our time and effort. Not a single response. So the reality is we applied to the court. First, we went to lead counsel. We were stonewalled. That's in the appendix. You'll see three separate e-mails and letters. There's a certification of my partner, Diane Sammons, who was lead on this. Stonewalled. So the reality is, again, the pre-appointment work was not cut off. That was an open issue, and the court below applied the wrong legal standard. Okay. You guys ought to get together and you can be Stonewalled Jackson. That would be perfect. And then I'm going to buy some flowers as well, Judge. Thank you. We thank all counsel for your arguments. Thank you. Very helpful. Thank you. This is, of course, an important case, and we will treat it so. The case just argued is submitted.
judges: M. Smith, Nguyen, Restani